**FILED**

**JANUARY 22, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALKAT CONSTRUCTION SERVICES INCORPORATED, | ) ) |
| Defendant. | ) |

**08 C 488**

**JUDGE SHADUR**
**MAGISTRATE JUDGE DENLOW**

Case No.

### COMPLAINT

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, and for their Complaint against Defendant Alkat Construction Services, Incorporated, state as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction is based on Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

### THE PARTIES

3.      The Funds are multiemployer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). The Funds have offices, conduct business and administer the plans within this District. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of

Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4.      Defendant Alkat Construction Services Incorporated (hereinafter "the Alkat Construction"), is a corporation in good standing according to the Illinois Secretary of State. Alkat Construction does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a). Plaintiffs allege that Alkat Construction is operating as a successor of KDK Concrete Construction, Inc.

5.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and KDK Concrete Contractors, Inc., ("KDK Concrete") are parties to a collective bargaining agreement ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the KDK Concrete which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds KDK Concrete to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit B.)

6.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the Safety Fund"), the Laborers' Employers' Cooperation & Education Trust ("LECET"), the Contractors' Association of Will and Grundy Counties (the "Will County Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), and the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), to act as an agent in the collection of contributions due to those funds.

7.      The Agreement obligates KDK Concrete to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the KDK Concrete, *inter alia*,

2

identifies the employees covered under the Agreement and the amount of contributions to the Funds remitted on behalf of each covered employee.

8.    The Agreement further obligates KDK Concrete to procure, carry and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions for the duration of the Agreement.

## COUNT I

Plaintiffs allege in Count I that Alkat Construction Services, Incorporated ("Alkat Construction") is liable as a successor of KDK Concrete Contractors, Inc., ("KDK Concrete "), for the unpaid contributions owed by its predecessor as follows:

9.    KDK Concrete's operations involved performing concrete construction work. KDK Concrete operated under the direction of its President, Kirk D. Knippenberg. On October 29, 2007, KDK Concrete filed a petition under Chapter 7 of the United States Bankruptcy Code, Case No.07-20051. KDK Concrete's operations ceased on or about September 13, 2007.

10.    On July 26, 2007, judgment was entered on behalf of the plaintiffs and against defendant in *Laborers' Pension Fund, et al., v. KDK Concrete Contractors, Inc.,* 07 C 1204 (N.D. Ill.). The total judgment was $49,456.81 consisting of employee benefit contributions for the period from June 1, 2004 through April 30, 2007, plus liquidated damages, interest, audit fees, attorneys' fees and costs. A copy of the judgment order is attached hereto as Exhibit A. The balance of $35,458.83 remains due to the Funds. On information and belief, Alkat Construction began its operations performing concrete construction work shortly before KDK Concrete ceased operations. Former owner and President of KDK Concrete, Kirk D. Knippenberg, is working for Alkat Construction and Alkat Construction is owned by Kirk D. Knippenberg's wife, Wanda Knippenberg, who is also Alkat Construction's president. A number of KDK Concrete's employees were hired by Alkat Construction to perform the identical work that they performed for KDK Concrete.

11.    On information and belief, Alkat Construction worked on projects which were previously left unfinished by KDK Concrete with equipment formerly used by KDK Concrete. Prior to filing a petition under Chapter 7 of the Bankruptcy Code, KDK Concrete made numerous payments to Alkat Construction consistent with both entities' cooperative business ventures.

3

12.     Based on KDK Concrete's President, Kirk D. Knippenberg's association with Alkat Construction, defendant Alkat Construction had knowledge of the amount of contributions owed to the plaintiffs' Fund, which were established in the Agreed Judgment Order, attached hereto as Exhibit A

13.     Based on, *inter alia,* common employees, similar work, some of the same tools and equipment and similar or identical customers, Alkat Construction is a successor of KDK Concrete and liable for the unpaid obligations owed to the Funds.

Wherefore, plaintiffs respectfully request this Court enter judgment against defendant Alkat Construction finding and declaring that Alkat Construction is a successor of KDK Concrete and granting judgment for the amounts of contributions owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, and any other legal equitable relief as the Court deems appropriate.

## COUNT II

Plaintiffs allege in Count II that Alkat Construction Services, Incorporated ("Alkat Construction") is liable as a successor of KDK Concrete Contractors, Inc., ("KDK Concrete "), for unpaid contributions owed by its predecessor for the period from September 2007 to the present as follows:

14.     Plaintiffs reallege and incorporated by reference paragraphs one through thirteen as paragraph 14 of Count II.

15.     Notwithstanding the obligations imposed by the Agreement, the KDK Concrete has:

(a)     failed to report contributions owed to plaintiff Laborers' Pension Fund from September 2007 to the present, and failed to pay contributions to said Fund in September 2007 to the present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b)     failed to report all contributions owed to Plaintiff Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from September 2007 to the present, and the pay contributions due to said Fund and from September 2007 to the present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c)    failed to report and pay all contributions owed to Laborers' Training Fund from in from September 2007 to the present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

(d)    failed to maintain a surety bond to guarantee the payment of wages, Pension and Welfare contributions.

16.    Despite demands duly made, Alkat Construction has not paid the required contributions or other sums due.

17.    All conditions precedent to requiring contributions and reports to the Funds have been met.

18.    Alkat Construction's actions in failing to make timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

19.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, Alkat Construction is liable to the Funds for unpaid contributions and related amounts, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs,  and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Alkat Construction Services, Incorporated, for the amounts of contributions owed to date together

with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, directing the Alkat Construction Services, Incorporated to obtain and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions as required by the Agreement, and an order directing Defendant to timely submit reports and upon demand by Plaintiffs submit to an audit, and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure To Pay Union Dues)

20.    Plaintiff realleges paragraphs 1 through 15 of Count II as paragraph 20 of Count III.

21.    Pursuant to the Agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been deducted from the wages of covered employees.

22.    Notwithstanding the obligations imposed by the Agreement, Alkat Construction has failed to withhold and/or to report to and forward the union dues deducted or the Union dues that should have been deducted from the wages of employees for the period from September 2007 to the present, thereby depriving the Union of income.

23.    Pursuant to the Agreement, the Alkat Construction is liable to the Fund for the unpaid union dues, as well as reasonable attorneys' fees, as the Union's collection agent, and costs, and such other legal and equitable relief as the Court deems appropriate.

24.    Alkat Construction's actions have violated and are violating Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, Alkat Construction for the amount of the union dues owed to date together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

6

By: _____
Attorneys for Plaintiff

Wesley Kennedy
Karen I. Engelhardt
Angie Cowan
Josiah A. Groff
ALLISON, SLUTSKY & KENNEDY, P.C.
230 West Monroe Street Suite 2600
Chicago, Illinois 60606
(312) 364-9400

January 21, 2008

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, JAMES S. JORGENSEN, <br><br>            Plaintiffs, <br><br>     v. <br><br> KDK CONCRETE CONTRACTORS, INC., <br><br>            Defendants. | No. 07 C 1204 <br><br> Judge Ronald Guzman |

### AGREED JUDGMENT ORDER

This matter coming to be heard on the motion of plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Laborers' Funds") agreed entry of a judgment.

### IT IS HEREBY ORDERED:

1.  That the Clerk of the Court shall enter judgment against the defendant KDK Concrete Contractors, Inc., in the total amount of: $49,456.81, which consists of the following:

    a)    Principal amounts owed for the audit covering the period from June 1, 2004 through April 30, 2007 in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $25,675.27

             Liquidated damages owed to the Funds . . . . . . . . . . . . . . . . . . . . . . . . $18,601.44

    b)    Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,746.33

    c)    Attorneys' fees and costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,450.00

    d)    Audit costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $983.77

**Exhibit A**

2nd Page Agreed Judgment Order
*Laborers' Pension Fund et al. v.*
*KDK Concrete Contractors, Inc.,*
07 C 1204

2.    Execution of judgment is stayed pending compliance with the terms of an Installment Note

and individual guaranty. Should defendant fail to make a payment or payments consistent with the

Installment Note or fail to pay current contributions as described by the Installment Note paragraph

10, plaintiffs may execute on the outstanding portion of the judgment as described in paragraph one,

above, without further order of court.

3.    The defendant is directed to comply with their obligations to the plaintiffs under ERISA,

and under the applicable collective bargaining agreement and Trust Agreements. Obligations include

filing monthly reports accurately reflecting the work performed within the jurisdiction of the labor

agreement and remitting timely contributions to the plaintiffs' Funds. All current contributions are

due the 10th day of the month following the month in which the work is performed. At all material

times, the Funds have discretion to credit any payment received from defendants to either the

amounts owed as described in paragraph one or to any future unpaid contribution.

4.    Defendant agrees and this Court orders defendant to obtain and maintain a surety bond in

the amount required by the Union to guarantee the payment of wages, pension and welfare

contributions as required by Article IX of the collective bargaining agreement. It is further ordered

that within 60 days of the date of this judgment order defendant shall provide written proof that it

has obtained such a surety bond to plaintiffs' counsel, Karen I. Engelhardt Esq., Allison, Slutsky &

Kennedy, P. C., 230 West Monroe, Suite 2600, Chicago, IL 60606.

5.    This Court retains jurisdiction to enforce the terms of the Installment Note and this Judgment

Order.

3rd Page Agreed Judgment Order
*Laborers' Pension Fund et al. v.*
*KDK Concrete Contractors, Inc.,*
07 C 1204

BY:

_____
On behalf of the Funds

_____
On behalf of KDK Concrete Contractors, Inc.,

ENTERED:

_____
UNITED STATES DISTRICT COURT

Date: 7/26

# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/635-8289 • FAX: 630/635-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **KDK Concrete Contractors Inc.**, ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I.C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail cable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, and the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the Locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees union members working dues ... of each other amount as directed by the Union, and shall remit monthly to the designated Union office the sums deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted sum amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to the Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of this Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers'-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if he had signed the original copies of the Trust Instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust Instruments. The Employer further affirms intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to its applicable Agreements. Upon written notice to the Employer, the Union may increase the minimum money bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and established fringe benefit fund-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its right to allocate and apportion such annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. If is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may strike to enforce the terms hereof.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless stated differently below) through May 31, 2006, and shall continue thereafter unless there has been written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the area-wide negotiations, the new agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and hereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

10. **Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: **7/14/02** , 20___

ACCEPTED:

Laborers' Local Union No. **5**

By: _David Main_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
Frank Riley, President & Secretary-Treas.

By: _____
James P. Connolly, Business Manager

For Office Use Only:

**KDK Concrete Contr. Inc.**
(Employer)

FEIN No.: **36-3924967**

By: **Kirk D Knippenberg**
(Print Name and Title)

_____
(Signature)

**13624 Larkspur**
(Address)

**Lockport IL 60441**
(City, State and Zip Code)

**815-485-3440**
(Telephone/Telefax)

WHITE - LOCAL UNION   •   CANARY - TRUST FUND   •   PINK - DISTRICT COUNCIL   •   GOLD - EMPLOYER

**Exhibit B**